IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | 2:25-mj-624 |
| SHAWN MONPER | ) ) ) | |

**MEMORANDUM IN SUPPORT OF SHAWN MONPER'S
PRE-TRIAL RELEASE**

Shawn Monper, through counsel, respectfully opposes the government's motion for detention in this case and seeks his release on any conditions the Court deems appropriate pursuant to the Bail Reform Act, 18 U.S.C. § 3142. This Court should release Mr. Monper into the community with restrictions it sees fit including GPS or electronic monitoring, internet monitoring, and home detention as the least restrictive means to ensure Mr. Monper's appearance at court and the safety of the community.

Mr. Monper is a 32-year-old son, brother, boyfriend, uncle and a full-time employee at Walmart in Butler, Pennsylvania. He stands before this Court with no criminal record, and a long track record of leading a law-abiding, responsible life. Mr. Monper has been meaningfully employed since he graduated high school, helps take care of parents and those around him, and enjoys video games and Dungeons and Dragons when he's not at work.

Mr. Monper was arrested in his home in Butler, Pennsylvania on April 9, 2025, and charged by complaint with four counts of violations of 18.U.S. § 115(a)(1)(B).

The government seeks detention based primarily on its contention that Mr.

1

Monper presents a danger to the community. The government must prove by clear and convincing evidence that there is "no condition or combination of conditions [that] will reasonably assure the safety of any other person in the community" before this Court can preventatively detain Mr. Monper. 18 U.S.C. § 3142(f). Further, an individual's "detention based on dangerousness accords with due process only insofar as the district court determines that the defendant's history, characteristics, and alleged criminal conduct make clear that he or she poses a concrete, prospective threat to public safety." *Munchel v. United States*, 991 F.3d 1273, 1283 (D.C. Cir. 2021). The government will not be able to do so given the history and actions (or lack of actions) taken by Mr. Monper. Accordingly, the government's allegations in this case do not override the other factors in the Bail Reform Act that weigh in favor of release.

## ARGUMENT

Consistent with the presumption of innocence and the Eighth Amendment prohibition against excessive bail, the Bail Reform Act of 1984 provides that a person charged should be released pending trial on personal recognizance or "subject to the least restrictive further conditions, or combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §§ 3142(b), (c)(1)(B). The Supreme Court has explained: "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). As a general rule, courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.). Any "[d]oubts

2

regarding the propriety of release should be resolved in favor of the defendant." *Id.* at 1405.

For these reasons, Congress has required that the government bear the burden of demonstrating, by clear and convincing evidence, that preventative detention is necessary to ensure the safety of the community.

I. **The government cannot prove by clear and convincing evidence that detention is necessary to assure Mr. Monper's appearance and the safety of the community.**

This Court must consider the following factors when determining whether the government has set forth clear and convincing evidence that Mr. Monper be detained: 1) the nature and circumstances of the offense charged; 2) the weight of the evidence; 3) the history and characteristics of the person charged; and 4) the nature and seriousness of the danger posed by the person to any person in the community if he is released. 18 U.S.C. § 3142(g). The balance of these factors weighs strongly in favor of release. As such, this Court should release Mr. Monper with the conditions it deems reasonably appropriate.

A. **The nature and circumstances of the offense charged do not call for preventative detention**

Mr. Monper is accused of serious federal charges, Class D felonies, which carry a potential maximum penalty of up to ten years of incarceration. However, in considering the nature and circumstances surrounding the alleged offense conduct, the Court should consider that the alleged conduct does not include any attempt to directly communicate with any United States official or law enforcement. The entirety of the government's criminal allegations are comments—in a sea of thousands of other comments—posted on videos on an internet site,

www.youtube.com. YouTube is video sharing platform owned by Google. On YouTube, people can view and upload videos with or without an account. In this case, Mr. Monper is not accused of uploading any original content or videos, nor does the account alleged to be Mr. Monper's have more than three followers. The government alleges that the offense conduct started in February of 2025, and there is no allegation that Mr. Monper planned to or in any way attempted to act on any alleged threats.

In sum, while the nature of the allegations is serious, allegations of threats of violence posted on an internet site alone are not sufficient to preventatively detain Mr. Monper. *See Salerno*, 481 U.S. at 755 (limiting the availability of detention hearings – where detention may then be considered, not presumed – to crimes of violence, offenses for which the sentence is life imprisonment or death, serious drug offenses, or certain repeat offenders).

### B. The weight of the evidence does not overcome the presumption of release

The government will not be able to prove that Mr. Monper violated 18 U.S.C. § 115(a)(1)(B). The weight-of-the-evidence strongly favors Mr. Monper's release pending trial.

Section 115(a)(1)(B) punishes one who "threatens to assault, kidnap, or murder, a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime" under § 1114 "with intent to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such official, judge, or law enforcement officer on account of the performance of official duties." 18 U.S.C. § 115(a)(1)(B). Accordingly, to obtain a conviction under

§ 115(a)(1)(B), the government must prove: (1) the individual made a "true threat" (as required by the First Amendment)—that is, a "serious expression[ ] conveying that a speaker means to commit an act of unlawful violence," *Counterman v. Colorado*, 600 U.S. 66, 74 (2023) (internal quotation marks omitted); and (2) the individual intended the threat to impede, intimidate, or interfere with an official's duties or retaliate against an official for his or her performance of those duties.

As courts have explained, "by its express language, section 115(a)(1)(B) contains a specific intent element: it punishes only threats made regarding enumerated officials with the intent to impede, intimidate, interfere with, or retaliate against such officials on account of the officials' performance of official duties." *United States v. Stewart*, 420 F.3d 1007, 1017 (9th Cir. 2005). "Thus, a conviction under that statute could only be had upon proof that the speaker intended the speech to impede, intimidate, interfere with, or retaliate against the protected official." *Id.* In other words, "[n]ot only does § 115(a)(1)(B) require the government to prove beyond a reasonable doubt that the defendant threatened certain action against a government official but also that the defendant made such a threat for the specific purpose of interfering with the performance of official duties or of retaliating for the performance of such duties." *United States v. Veach*, 455 F.3d 628, 633 (6th Cir. 2006); *see also* United States v. Credico, 718 F. App'x 116, 121 (3d Cir. 2017) (explaining that "Section 115(a)(1) includes a specific intent requirement focusing on the defendants' subjective purpose for making the threats" and affirming conviction because the defendant "admitted that he left these messages because he believed" that the FBI agent "had been involved in his expulsion").

5

When the alleged threat was not made directly to officials but instead to third parties, the government must prove that the speaker believed or expected that his statements would reach the targeted officials. Although the target's actual *receipt* of the threat is not required, and although "the communication can be through a third person," the accused individual "must have intended to communicate a threat to an official." *United States v. Rendelman*, 495 F. App'x 727, 732 (7th Cir. 2012). In *United States v. Fenton*, 30 F. Supp. 2d 520 (W.D. Pa. 1998), Judge D. Brooks Smith (then on the district court) vacated a defendant's conviction under § 115(a)(1)(B) because "the government put on no evidence that [the defendant] intended his words to be conveyed to [the Congressman]," "who was not 'in the audience' when [the defendant] spoke." *Id.* at 527. "In addition, there [was] no evidence that [the defendant] wanted [the Congressman] to take any official action, or refrain from taking any such action, as a result of his 'threats.'" *Id.* Further, as Judge Smith explained, "[a] threat that is never communicated to the victim and is not intended to be carried out by its speaker is no retaliation at all." *Id.* at 528. After all, "it is the conveyance of the threat to the victim—and the fear and apprehension such a communication carries with it—which constitutes the retaliation" or intimidation. *Id.* at 530.

Here, there is *no* indication that Mr. Monper specifically intended his alleged statements—posted as comments on four YouTube videos—to reach President Trump, Elon Musk, or ICE officials. Of course, Mr. Monper would not have expected the foregoing officials to be perusing the comment section of YouTube videos, spotting his comments among the thousands of other anonymous comments on those videos. Nor do the comments themselves reveal any specific intent to influence or retaliate against

6

the referenced officials. Instead, the YouTube comments—even if they are disturbing to read—are the equivalent of shouting into a void. Indeed, research has shown that feelings of "anonymity and invisibility" when communicating on the internet commonly lead people to "say or do things that they would not do in real life, known as the online disinhibition effect." Mueller-Coyne, Voss, & Turner, *The impact of loneliness on the six dimensions of online disinhibition*, Computers in Human Behavior Reports 1 (2022); *see also* Suler, *The online disinhibition effect. CyberPsychology & Behavior* 321-26 (2004). There is simply no reason to believe that Mr. Monper desired his alleged comments to be communicated to anyone within the orbit of President Trump or the other referenced officials—let alone to influence or retaliate against those officials for the performance of their official duties.

In sum, because the government will be unable to prove that Mr. Monper violated § 115(a)(1)(B), he should retain his liberty unless and until he has been found guilty beyond a reasonable doubt.

### C. Mr. Monper's history and characteristics strongly weigh in favor of release.

Shawn Monper is a 32-year-old, fulltime employed, law-abiding member of his community. As many people in his life attest, Mr. Monper is close to his family, and his parents rely upon him for physical, financial, and emotional support. Mr. Monper has spent his entire life in the Butler County area, graduating from Butler Senior High School, and maintaining fulltime consistent employment at Walmart and Benbrook Medical Center (through Orloski Building Services) since shortly after high school graduation. For the past six years, Mr. Monper has been ensuring the residents of Butler have access to well-stocked, fresh meat and produce. He wakes up just after

3:00 AM to work his shift from 4:00 AM to 1:00 PM and typically heads to bed just after 7:00 PM. The work is strenuous, and he is valued by colleagues and his manager. After work, he spends time with friends and loved ones partaking in bowling, Dungeons and Dragons, and video games. Mr. Monper does not engage in unlawful drug use and only on the rarest occasions consumes any alcohol. His life is defined by stability and routine.

This year, Mr. Monper has also exercised his legitimate Second Amendment right to legally purchase and possess three handguns. Mr. Monper had previously possessed non-firearm pellet guns, and his father, William Monper owned a long rifle and Glenfield model antique gun. Mr. Monper lawfully applied for a Pennsylvania license to carry firearms to transport his firearms to a local shooting range. The permit was issued on January 28, 2025. Mr. Monper lawfully purchased three pistols in March and April of 2025. The pistols, accessories, and a limited amount of ammunition were taken by FBI agents pursuant to a search warrant executed on April 10, 2025.

Given Mr. Monper's significant family and friend support in addition to his lack of criminal history or substance use issues, and because of his pro-social ties and substantial work history and ethic, Mr. Monper's history and characteristics strongly favor release.

### D. Mr. Monper does not pose a danger to the community and conditions can mitigate any concern.

To further address any concerns the Court may have, Mr. Monper presents his mother, Pam Monper, as a Third-Party Custodian. Mrs. Monper is retired from Walmart, and spends most of her time at home. She is willing to assist Mr. Monper with

any planned travel for court appearance and can monitor his compliance with pretrial release conditions. To further address any concerns the Court may have, Mr. Monper proposes that the Court could also impose the following conditions of release under 18 U.S.C. § 3142(c)(1)(B):

- (a) He will submit to supervision by U.S. Pretrial Services by phone or in person as directed by the Court.

- (b) He will continue his full-time employment at Walmart at Butler Commons.

- (c) He will not possess a firearm, destructive device, or other weapon.

- (d) He will not use alcohol excessively.

- (e) He will refrain from any use of a narcotic drug or other controlled substance without a prescription.

- (f) He will undergo medical, psychological, or psychiatric treatment as directed by pretrial services.

- (g) He will be subject to a curfew, GPS location monitoring, and home detention if recommended by pretrial services.

- (h) He will abide by home incarceration, in the alternative, but would ideally be able to maintain his employment at Walmart.

- (i) He will abide by "any other" release conditions that the Court deems "reasonably necessary to assure" appearance or safety.

Taken together, the release plan and proposed conditions are sufficient to reasonably assure the safety of the community and his return to court if he is released. And because such conditions exist, he should be released.

## II. Statistics show that it is extremely rare for federally charged people on bond to flee or recidivate, further confirming that the foregoing release conditions will reasonably assure appearance and safety.

It is not necessary to detain Mr. Monper to meet the primary goals of the Bail Reform

Act, which are to reasonably assure appearance in court and community safety. Indeed, AO statistics show that nearly everyone released pending trial in the federal system appears in court and does not reoffend. In fact, in 2022, 99% of released federal defendants nationwide appeared for court as required and 98% were not arrested for new crimes on bond. *See* AO Table H-15 (September 30, 2022) ([available at link](#)).

The bond statistics for this district likewise strongly suggest that Mr. Monper should be released. In this district, released federal defendants appeared for court more than 99% of the time in 2022, and approximately 94% were not rearrested for new crimes on bond. *Id*. Though not a substitute for consideration of Mr. Monper's individual characteristics, these statistics provide some objective reassurance that detention is not necessary here.

## **Conclusion**

Shawn Monper deserves his freedom as he continues to have the presumption of innocence while complying with comprehensive release conditions short of incarceration. At his upcoming detention hearing, he will request that the Court release him on bond, subject to any conditions the Court deems appropriate.

Respectfully submitted:

/s/ *Kathryn Dyer*
Kathryn Dyer
Assistant Federal Public Defender